# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| D'ANGELO JOSEPH, individually | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-126-JED-TLW |
| | ) |
| STEVEN SILVER, Officer, in his | ) |
| individual and official capacity, | ) |
| CLIFTON JOHNSON, Officer, in his | ) |
| individual and official capacity, | ) |
| CITY OF BARTLESVILLE, a | ) |
| municipal corporation, State of | ) |
| Oklahoma, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is the defendants' Motion for Summary Judgment (Doc. 39). Plaintiff D'Angelo Joseph brings claims of excessive force, under 42 U.S.C. § 1983 and the Oklahoma Constitution, against Officer Steven Silver, Officer Clifton Johnson, and the City of Bartlesville, Oklahoma (collectively, the "defendants"). For the reasons outlined below, the defendants' motion is granted in part.

### BACKGROUND

The uncontested facts are few. Sometime late the night of March 28, 2012, or early the next morning, the plaintiff was driving home with an unlit license plate light. Defendant Officer Steven L. Silver, who had joined the Bartlesville Police Department (the "BPD") the month before, was on patrol, driving a marked police cruiser. Defendant Officer Clinton Johnson, a year into his service with BPD and acting as Officer Silver's Field Training Officer, sat in the

cruiser's passenger seat. When the plaintiff drove past the officers, Officer Silver noticed the unlit license plate light and began to follow him.

Officer Silver decided to stop the plaintiff. When Officer Silver turned on his lights, the plaintiff did not immediately stop. Officer Silver then turned on his siren. The plaintiff turned off the road and eventually into his driveway, where he exited his vehicle. Officer Silver then struck the plaintiff with his patrol vehicle. After hitting the plaintiff, Officer Silver got out of his vehicle and fired his taser at the plaintiff without effect, as only one of its two probes connected with the plaintiff. By now the plaintiff lay on the ground, his leg badly broken, and Officer Silver pressed his taser against the plaintiff's body and successfully shocked him before handcuffing him.

This much the parties agree on. Their accounts diverge at the mental states of those involved, and whether and in what ways their actions bore out their intentions. The parties disagree, for example, regarding the length of time that passed before the plaintiff responded to the lights and siren behind him. The defendants claim the plaintiff was fleeing the police and exited his vehicle to continue his flight. The plaintiff claims he did not realize the officers were following him and when he did he pulled over and Officer Silver parked behind him. According to the plaintiff, he stepped out of his car to find out what the officers wanted and Officer Silver hit the gas and slammed his vehicle into him, snapping the plaintiff's tibia and fibula above the foot.

As noted above, the defendants do not dispute that Officer Silver hit the plaintiff with his patrol vehicle. Instead, they claim that the plaintiff stopped abruptly and bailed out of his car to run. To avoid rear-ending the plaintiff's car, Officer Silver swerved around it and lost control of his vehicle in the driveway gravel before sliding into the plaintiff and pinning him against his

car. The plaintiff then ran (the plaintiff claims he crawled, hobbled by his broken leg) and Officer Silver fired his taser at him and the plaintiff fell to the ground (or, as the plaintiff tells it, remained prone).

The defendants claim the plaintiff lay on his stomach and kept one arm beneath him, refusing to allow the officers to handcuff him. This resistance required a quick compliance-inducing zap from Officer Silver before he could handcuff the plaintiff. The plaintiff only remembers crawling—rather than running—away from the car, and screaming about the bones protruding from his leg above his unnaturally twisted foot. He claims a taser was not required to subdue him given his obvious injuries.

## STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52. The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255; *see also Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth

of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

## DISCUSSION

The defendants move for summary judgment, arguing that the record does not support the plaintiff's claims of excessive force. The defendants also argue that the plaintiff cannot maintain his claims against Officer Johnson specifically, as Officer Silver—and not Officer Johnson—hit the plaintiff with his car and tased him, or against the City of Bartlesville, as in Oklahoma a claim of excessive force against a municipality is properly brought under the Oklahoma Governmental Tort Claims Act, and not *Bosh v. Cherokee Building Authority*, 305 P.3d 994 (Okla. 2013).

### I. Qualified Immunity and Excessive Force

Police officers performing their official duties are entitled to the affirmative defense of qualified immunity, which protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). After a defendant asserts a

qualified immunity defense, the burden shifts to the plaintiff, who must satisfy a two-part burden: first, that the defendant's actions violated a constitutional or statutory right and, second, that that right was clearly established at the time of the defendant's unlawful conduct. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015) (citations omitted).

Courts analyze claims of excessive force under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under this standard, a court assesses the reasonableness of an officer's conduct "from the perspective of a reasonable officer on the scene" and must "allow[] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. This analysis is heavily fact-dependent, and relevant factors include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citation omitted).

The Tenth Circuit has "recognized that the reasonableness inquiry in excessive force cases overlaps with the qualified immunity question," as both require courts to apply a reasonableness standard. *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Quezada v. Cnty. of Bernalillo*, 944 F.2d 710, 718 (10th Cir. 1991)). As a result, the defense of qualified immunity is "of less value when raised in defense of an excessive force claim." *Id.* A court may not grant summary judgment on a claim of excessive force brought under § 1983 where "*any* genuine issue of material fact remains—regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314-15 (10th Cir. 2002) (original emphasis) (citing *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir.

1997)). "Where a disputed issue of material fact remains, that ends the matter for summary judgment," and the court will not consider whether an officer's actions were objectively reasonable. *Id.* at 1315.

This case rises or falls on disputed material facts. The parties agree that Officer Silver, with Officer Johnson riding in the passenger seat, stopped the plaintiff for an unlit license plate light and that Officer Silver hit the plaintiff with his patrol vehicle after the plaintiff stepped out of his car. The parties also agree that Officer Silver fired his taser at the plaintiff—ineffectively, as one of the probes missed—and then, as the plaintiff lay on the ground, tased him with the taser's fixed contact points. The parties dispute whether the plaintiff was fleeing, whether Officer Silver intentionally drove into the plaintiff and thereby broke his leg or simply lost control of his vehicle, whether the plaintiff ran after he was hit or instead was immobilized by a mangled leg, and whether the plaintiff resisted being handcuffed or was unnecessarily tased.

These insurmountable issues of material fact have reduced the defendants to arguing that the plaintiff's version of events is unworthy of belief because it is contradicted by the defendants' version. The defendants argue that physical evidence at the scene—including eight-foot skid marks, gravel pooled in front of Officer Silver's tires, and an absence of acceleration marks—supports their version of events and is inconsistent with the plaintiff's. (Doc. 51 at 5). The source of this evidence in the defendants' summary judgment motion is the affidavit of Sergeant Randy Tayrien. According to the defendants, Sergeant Tayrien is "a lay witness whose Affidavit is based on first-hand knowledge, actual observations, his investigation and the conclusions drawn from his first-hand knowledge, observations and perception." (Doc. 49 at 3). In other words, the defendants ask the Court to find one of the defendant officers' fellow officers more credible than the plaintiff. This is not the Court's role at the summary judgment stage.

6

The defendants also note that the plaintiff testified that the "big black grate" on the front bumper is the part of Officer Silver's vehicle that made contact with him. This is indisputably false, as photographs of the vehicle reveal an unadorned front bumper. The fact is immaterial, however, and principally goes to the reliability of the plaintiff's memory and ultimately his credibility.

The defendants point to damage on the plaintiff's car consistent with contact with another vehicle and therefore, they argue, their version of the facts. Of course, cars acquire damage in all kinds of ways, and damage to the plaintiff's car, while consistent with the defendants' version, is not inconsistent with the plaintiff's version.

Finally, as elsewhere, the defendants ask the Court to discount the plaintiff's testimony regarding the tasing, as so "blatantly contradicted by the record . . . that no reasonable jury could believe it." (Doc. 51 at 6 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). In so doing, the defendants characterize the plaintiff's testimony as mere "allegations" and the defendants' testimony as "evidence." At bottom, the parties tell very different stories which give rise to several material factual disputes. Any resolution of these disputes would require precisely the types of credibility determinations and factual inferences that the Court is precluded from making at the summary judgment stage.

As the plaintiff's entire case revolves around a core of disputed issues of material fact, the Court "may not move on to determine whether an officer's actions were 'objectively reasonable,'" *Olsen*, 312 F.3d at 1315, and the defendants' qualified immunity claim is denied.

**II.    Officer Johnson**

The law imposes on police officers an affirmative duty to intervene to prevent fellow officers from violating the constitutional rights of citizens. Accordingly, an officer who fails to

7

attempt to prevent his fellow officer's excessive use of force may be liable under § 1983. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (citing *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). An officer who so fails will be liable where he observes or has reason to know that (1) excessive force is being used, (2) a citizen has been arrested unjustifiably, or (3) a law enforcement official has committed any constitutional violation. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). Importantly, liability will not attach unless the officer had a realistic opportunity to intervene. *Id.*

Whether the opportunity to intervene was realistic often depends on the amount of time over which the violation occurred. *See Fogarty*, 523 F.3d at 1164 (supervising officer had opportunity to intervene where challenged arrest "last[ed] between three and five minutes"); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 207 (1st Cir. 1990) (no realistic opportunity where "attack came quickly and was over in a matter of seconds"); *Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994) (no realistic opportunity where officer tackled and cuffed plaintiff in a matter of seconds). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Vondrak*, 535 F.3d at 1210 (citing *Anderson*, 17 F.3d at 557).

The plaintiff argues that Officer Johnson failed to intervene to prevent two separate uses of excessive force: first, that he failed to intervene to prevent Officer Silver from hitting the plaintiff with his vehicle; second, that he failed to prevent Officer Johnson from unnecessarily electrocuting the plaintiff with a taser.

8

As to the first claim, a reasonable jury could not conclude that Officer Johnson had a realistic opportunity to intervene. On the plaintiff's version of the facts, Officer Silver drove from behind the plaintiff's vehicle and hit the plaintiff with his patrol car. The plaintiff argues that Officer Johnson, as Officer Silver's field training officer, "was in the best position to intervene and order Defendant Silver to stop the vehicle." (Doc. 46 at 29). Taking the plaintiff's version of the facts as true, Officer Johnson was in the "best position" as compared to anyone else, but this does not mean he had a realistic opportunity to intervene. Officer Silver saw the plaintiff exit his vehicle, accelerated, swerved around the parked vehicle, and struck the plaintiff with his patrol vehicle. On this record, the Court has no reason to believe this did not surprise Officer Johnson as much as it did the plaintiff. Officer Silver's actions, as alleged by the plaintiff, occurred over a matter of seconds and did not give Officer Johnson a realistic opportunity to intervene.[1]

The second claim is a different matter. Taking the facts in the light most favorable to the plaintiff, Officer Johnson witnessed Officer Silver hit the plaintiff with his car and then attempt to tase him a first time. At this point, Officer Silver's intention to harm the plaintiff, including by tasing him a second time in spite of his severely broken leg, was clear, and Officer Johnson had an opportunity to intervene. *See Aldaba v. Pickens*, 777 F.3d 1148, 1159 (10th Cir. 2015) (affirming summary judgment order denying qualified immunity to officers where fellow

---

[1] The cases cited by the plaintiff support this conclusion. (*See* Doc. 46 (citing *Thompson*, 33 F.3d at 857 (no realistic opportunity where officer tackled and cuffed plaintiff in a matter of seconds); *Gaudreault*, 923 F.2d at 207 n.3 (no realistic opportunity where "attack came quickly and was over in a matter of seconds"); *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (no realistic opportunity where three blows struck in "rapid succession")). In terms of duration, an officer hitting a plaintiff with a car is more analogous, for example, to an officer tackling a plaintiff, *Thompson*, 33 F.3d at 857, than to an arrest developing over three to five minutes, *Fogarty*, 523 F.3d at 1164.

officer's first attempt to tase decedent made clear his intent to use taser in 2011 incident). A reasonable jury could conclude that Officer Johnson had sufficient time to intervene to prevent Officer Silver from tasing the plaintiff.

Accordingly, the defendants' summary judgment motion as to Officer Johnson's opportunity to intervene is granted with respect to the first claim of excessive use of force (the alleged vehicular assault) and denied with respect to the second (the tasing).

### III.     The City of Bartlesville

In *Perry v. City of Norman*, 341 P.3d 689 (Okla. 2014), the Supreme Court of Oklahoma held that "a *Bosh v. Cherokee Building Authority*, 2013 OK 9, 305 P.3d 994, claim for excessive force, as applied to police officers and other law enforcement personnel, may not be brought against a municipality when a cause of action under the [Oklahoma Governmental Tort Claims Act] is available." Although the plaintiff in *Perry* did not commit a crime and did not resist arrest, a group of police officers choked him, slammed him to the ground, and twisted his arm behind his back until it broke and he lost consciousness. *Id.* at 690. Despite these flagrant abuses, the Supreme Court of Oklahoma found that the plaintiff could not bring a *Bosh* claim against the City of Norman because "the plaintiff's remedy belongs exclusively within the confines of the OGTCA and a jury's determination concerning whether the police officers were acting within the scope of their employment under the OGTCA." *Id.* at 693.

The plaintiff's attempts to distinguish the present case are unavailing. Accordingly, the City of Bartlesville is entitled to summary judgment.

### IV.     Related Motions

The plaintiff has also moved to strike certain exhibits attached to the defendants' summary judgment motion (Doc. 47).  Having ruled on the summary judgment motion without relying on these exhibits, the plaintiff's motion is moot.

The defendants moved to strike the plaintiff's response to their summary judgment motion in its entirety on the basis that the plaintiff filed it two days out of time and nine pages over limit (Doc. 48).  The Court admonishes counsel for the plaintiff to review and comply with both the Federal and Local Rules, and reserves the right to sanction the plaintiff for future violations, including by striking documents.  In this instance, however, the Court declines to exercise its discretion to do so, and denies the defendants' motion.

#### CONCLUSION

Because disputed issues of material fact abound, the Court denies the defendants' summary judgment motion as to their claims of qualified immunity.  The motion is granted in part as to Officer Johnson's opportunity to intervene, as he could not have intervened to stop Officer Silver's car from striking the plaintiff but possibly could have intervened to prevent the plaintiff from being tased.  Finally, the defendants' summary judgment motion is granted with respect to the plaintiff's claim against the city.

**IT IS THEREFORE ORDERED** that the defendants' Motion for Summary Judgment (Doc. 39) is **granted in part** and **denied in part** in accordance with this Opinion and Order.

**IT IS FURTHER ORDERED** that the plaintiff's Motion to Strike Exhibits (Doc. 47) is **moot** and the defendants' Motion to Strike Documents (Doc. 48) is **denied**.

**SO ORDERED** this 30th day of October, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

11